**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>APPLICATION OF OLGA KURBATOVA FOR AN ORDER UNDER 28 U.S.C. § 1782 TO TAKE DISCOVERY FROM LYXOR ASSET MANAGEMENT INC. AND ELLIOT DANILOFF | Case No. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF OLGA KURBATOVA'S *EX PARTE***
**APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782**
**TO TAKE DISCOVERY FROM**
**LYXOR ASSET MANAGEMENT INC. AND ELLIOT DANILOFF**

## **TABLE OF CONTENTS**

Page(s)

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 3

    I.    Ms. Kurbatova's Relationship with Credit Suisse and Mr. Lescaudron ....................... 3

    II.    The Misconduct ............................................................................................................. 3

    III.    The Lyxor Product and Hudson Fund ....................................................................... 4

    IV.    The Foreign Proceedings ............................................................................................ 5

        A.    Pending Criminal Investigation Against Credit Suisse ............................................ 5

        B.    Pending Criminal Proceedings Against Mr. Lescaudron .......................................... 5

        C.    Contemplated Civil Proceedings ............................................................................... 7

ARGUMENT ................................................................................................................................ 7

    I.    The Application Meets the Statutory Prerequisites for Relief Under Section 1782. ..... 8

    II.    The Discretionary *Intel* Factors Weigh in Favor of Granting Discovery Under Section 1782 ................................................................................................................................ 12

        A.    Whether Discovery Target Is Party to Foreign Proceeding ................................... 12

        B.    Receptivity of Foreign Proceedings to U.S. Judicial Assistance ............................ 13

        C.    Whether Request Is Attempt to Circumvent Foreign Proof-Gathering Restrictions 13

        D.    Whether Request Is Unduly Burdensome ............................................................... 14

CONCLUSION .......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262 (11th Cir. 2014) .................................................................... 11

*Application of Malev Hungarian Airlines*, 964 F.2d 97 (2d Cir. 1992) ................................... 8

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ................ 8, 13

*Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095 (2d Cir. 1995) ................................. 13, 14

*Gushlak v. Gushlak*, 486 Fed.Appx. 215 (2d Cir. 2002) ........................................................ 1

*In re Application of Gemeinschaftspraxis Dr. Med. Schottd01:f*; No. Ml 9-88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................................................ 13

*In re Application of Hill*, No. M 19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ................................................................................................ 13

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96 (S.D.N.Y. 2008) ................................................................................................................................ 9

*In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. §1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 18-MC-00047 (PAC), 2018 WL 895675 (S.D.N.Y. Feb. 14, 2018) ......................................................................................... 1

*In re Clerici*, 481 F.3d at 1333 (11th Cir. 2007) ................................................................... 11

*In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517 (S.D.N.Y. 2016) ................ 9

*In re Mangouras*, No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ................ 14

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ....................... 2, 7, 8, 10, 12

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ....................................................................... 14

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) .................................................. 14

*Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215 (1994) ................ 14

**Statutes**

28 U.S.C. § 1782 .............................................................................................. passim

**Federal Rules**

Fed. R. Civ. P. 26-36 ................................................................................................................ 14

Fed. R. Civ. P. 26(b) ................................................................................................................ 15

Applicant Olga Kurbatova ("Ms. Kurbatova" or the "Applicant") respectfully petitions this Court *ex parte*[1] for an order pursuant to 28 U.S.C. § 1782 authorizing her to take discovery from Lyxor Asset Management Inc., a corporation registered in New York, and Elliot Daniloff. The requested relief is for the purpose of obtaining limited, but critical, discovery for use in pending criminal and reasonably contemplated civil proceedings before Swiss courts.

## PRELIMINARY STATEMENT

This application for discovery (the "Application") stems from a massive criminal scheme perpetrated by Patrice Lescaudron, a Credit Suisse bank employee responsible for managing the assets of wealthy individuals. After engaging in improper and unauthorized trading in the accounts of his clients, Mr. Lescaudron tried to cover up the resulting losses by transferring money from some client accounts to the accounts of other clients that had sustained losses. Along the way, he also diverted amounts for his own profit, enriching himself through various schemes in which he had his clients invest. Earlier this year, a Swiss court sentenced Mr. Lescaudron to five years' imprisonment for his crimes.

The Applicant, Ms. Kurbatova, is one of Mr. Lescaudron's victims, having suffered approximately US $35 million in losses. As is relevant to this Application, the investments in her Credit Suisse account included, among other things, (i) direct holdings in multiple series of the Hudson River Russia Fund, Ltd. (the "Hudson Fund"); and (ii) holdings in a product structured by an asset manager, Lyxor Asset Management Inc. and its affiliates ("Lyxor"), called Lyxor – [x3 Dynamic Leverage Fund] Certificate (the "Lyxor Product").

---

[1] "[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *In re BNP Paribas Jersey Tr. Corp. Ltd. for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in Foreign Proceedings*, No. 18-MC-00047 (PAC), 2018 WL 895675, at *2 (S.D.N.Y. Feb. 14, 2018) (quoting *Gushlak v. Gushlak*, 486 Fed.Appx. 215, 217 (2d Cir. 2002)).

In the wake of Mr. Lescauldron's scheme, Ms. Kurbatova has learned through investigation that: (1) the Lyxor Product, in actuality, also held interests in the Hudson Fund, meaning that Ms. Kurbatova was heavily exposed to the risks associated with that investment in a way that was not apparent from the face of account statements, which do not reveal what the Lyxor Product is comprised of; (2) the Hudson Fund is an investment fund of Daniloff Capital, an investment firm founded by Elliot Daniloff; and (3) Mr. Lescauldron apparently made these substantial investments in the Hudson Fund after having performed very little, if any, real due diligence on it.

For the reasons set forth below, the Court should grant Ms. Kurbatova's Application under 28 U.S.C. § 1782 ("Section 1782") seeking discovery from Lyxor and Mr. Daniloff related to Mr. Lescaudron's decision to invest in the Lyxor Product and the Hudson Fund for Ms. Kurbatova's account without Ms. Kurbatova's permission.

*First*, the Application meets the statutory requirements of Section 1782. Ms. Kurbatova seeks discovery from Lyxor and Mr. Daniloff, and both are found in this district. The materials sought are "for use" in pending and contemplated foreign proceedings, including criminal proceedings and an investigation arising out of Mr. Lescaudron's activities and contemplated civil claims by Ms. Kurbatova against Mr. Lescaudron and Credit Suisse. Further, Ms. Kurbatova is an "interested person" in these foreign proceedings, as she is a Plaintiff with the right to submit evidence in the criminal proceedings (including on appeal) and will be the claimant in the contemplated civil claims.

*Second*, as explained below, the discretionary factors that this Court should consider in determining whether to grant an application under the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.* favor granting the Section 1782 application.

Accordingly, and for the reasons discussed below, the Court should grant this Application.

2

**FACTUAL BACKGROUND**

I.   **Ms. Kurbatova's Relationship with Credit Suisse and Mr. Lescaudron**

Ms. Kurbatova has an account at Credit Suisse called the DREAM account, which she opened on April 26, 2005. (Kurbatova Decl. ¶ 11.) The DREAM account is, and always has been, nondiscretionary, meaning that only she or her powers of attorney could authorize trades in the account. (Kurbatova Decl. ¶ 11.)

As the relationship manager for the DREAM account, Mr. Lescaudron made investment recommendations to Ms. Kurbatova. (Kurbatova Decl. ¶¶ 12-13.) Neither Ms. Kurbatova nor her staff have any finance experience, so she trusted Mr. Lescaudron's advice and believed him to be an expert acting under Credit Suisse's supervision, consistent with Credit Suisse's policies, and with all investments having met Credit Suisse's approval after due analysis by Credit Suisse. (Kurbatova Decl. ¶¶ 13, 14.) Credit Suisse held Mr. Lescaudron out as acting under its authority. (Kurbatova Decl. ¶ 14.)

II.   **The Misconduct**

In reality, Mr. Lescaudron was engaged in rampant misconduct. (*See* Kurbatova Decl. ¶¶ 15-31.) He made unauthorized investments on behalf of some of his clients, including Ms. Kurbatova, that did poorly. (*See* Kurbatova Decl. ¶ 16; Cogan Decl. Ex. 4, at 2.) To hide those loses, he then transferred the assets of another wealthy client into his victims' accounts without permission and made other unauthorized investments to hide the losses. (*See* Cogan Decl. Ex. 3, at 1, 3.)

According to the press, Mr. Lescaudron "orchestrat[ed] a scheme that resulted in damages of 143 million Swiss francs ([US] $152 million) as he diverted cash from client accounts to cover bad trades in one of the biggest financial crimes in Swiss history." (Cogan Decl. Ex. 4, at 1.) He also diverted money from the scheme to himself. (Cogan Decl. Ex. 9, at

1.) In the resulting criminal case against him in Swiss court, he received, among other penalties, a sentence of five years in prison. (*See* Straub Decl. ¶ 21.)

With regard to Ms. Kurbatova specifically, to perpetrate his scheme, Mr. Lescaudron lied about the nature and quality of the investments, forged Ms. Kurbatova's signature on authorization forms, and made investments without her prior consent. (*See* Kurbatova Decl. ¶¶ 15, 16, 18.)

### III. The Lyxor Product and Hudson Fund

The Lyxor Product and Hudson Fund were two of the improper investments Mr. Lescaudron made in Ms. Kurbatova's account. (*See* Kurbatova Decl. ¶ 19.) The Lyxor Product consisted of notes representing interests in a Jersey Unit Trust (the "Fund") that sought to make leveraged investments in hedge funds. (Kurbatova Decl. ¶ 25.) The Lyxor Product is managed by Lyxor, which is registered to do business in New York and has an office in Manhattan. (Kurbatova Decl. ¶ 19; *See* Cogan Decl. Ex. 5, at 5, Ex. 6.) The hedge funds that the Fund invested in included multiple series of the Hudson Fund. (Kurbatova Decl. ¶ 26.) The total issuance of the Lyxor Product was $60 million, $22 million of which was held by clients of Mr. Lescaudron. (Kurbatova Decl. ¶ 25.)

The Hudson Fund is a hedge fund managed by Daniloff Capital, founded by Mr. Daniloff and having its office in Manhattan. (Kurbatova Decl. ¶ 28; *see* Cogan Decl. Ex. 7, Ex. 8.) Mr. Lescaudron bought for Ms. Kurbatova's account not just indirect interests in the Hudson Fund (through the Lyxor Product, which in turn held interests in the Hudson Fund), but also direct holdings in the Hudson Fund. (*See* Kurbatova Decl. ¶¶ 26, 27.) After the revelation of Mr. Lescaudron's scheme and the realization that Mr. Lescaudron had taken large direct and indirect positions in the Hudson Fund, representatives of Ms. Kurbatova briefly spoke to Mr. Daniloff about the Hudson Fund and Mr. Lescaudron's involvement with it. (*See* Kurbatova Decl. ¶¶ 27, 28.) Mr. Daniloff explained that Mr. Lescaudron had agreed to invest in the

4

Hudson Fund after only a short conversation and without conducting any significant due diligence. (Kurbatova Decl. ¶ 28.) Mr. Lescaudron also invested clients' assets in other funds that had an interest in the Hudson Fund, and stole client funds to invest further in the Hudson Fund through entities Mr. Lescaudron created. (Kurbatova Decl. ¶ 29.)

In 2008, Ms. Kurbatova instructed Mr. Lescaudron to sell the positions in the Lyxor Product. (Kurbatova Decl. ¶ 30.) She now understands, however, that he simply transferred funds from another customer's account to hers to give the appearance that he had been able to sell the product. (Kurbatova Decl. ¶ 30.)

### IV.   The Foreign Proceedings

As noted above, Mr. Lescaudron has already been tried and found guilty of certain crimes. (*See* Straub Decl. ¶ 21.)  This judgment is currently under appeal by Mr. Lescaudron as well as several plaintiffs, including Ms. Kurbatova. (Straub Decl. ¶ 22.)  That, however, is only one of many proceedings related to his misconduct. (*See* Straub Decl. ¶ 4.) Ms. Kurbatova seeks discovery here in aid of the following proceedings:

#### A.   Pending Criminal Investigation Against Credit Suisse

The prosecutor has opened a separate case to investigate the potential criminal liability of Credit Suisse in relation to Mr. Lescaudron's scheme. (Straub Decl. ¶ 6.)  Ms. Kurbatova is a plaintiff in this investigation, with the right to submit evidence for the prosecutor to consider in determining whether to charge Credit Suisse. (Straub Decl. ¶ 6.)

#### B.   Pending Criminal Proceedings Against Mr. Lescaudron

Ms. Kurbatova and other victims of Mr. Lescaudron filed criminal complaints against him in Switzerland. (*See* Straub Decl. ¶¶ 11, 12.) Ms. Kurbatova's complaint, dated August 4, 2016, alleged misappropriation, fraud, criminal mismanagement, and forgery of documents, as well as any other crime the investigation could reveal. (Straub Decl. ¶ 11.) At least five other victims of Mr. Lescaudron filed criminal complaints. (Straub Decl. ¶ 12.)

5

The prosecutor charged Mr. Lescaudron in Swiss criminal court with fraud, forgeries of documents, and criminal mismanagement. (*See* Straub Decl. ¶ 14.) These charges, however, did not cover the full extent of the scheme that Ms. Kurbatova alleged and omitted many aspects of the scheme that some of the plaintiffs had asserted. (*See* Straub Decl. ¶ 15.)

Ms. Kurbatova appealed the prosecutor's decision not to include the full extent of the alleged scheme by Mr. Lescaudron (the "First Appeal"). (*See* Straub Decl. ¶ 16.) While that appeal was recently denied, she has further appealed the decision to the Swiss Federal Tribunal and, if she wins before the Swiss Federal Tribunal, the underlying case will continue, and Ms. Kurbatova may use evidence obtained from this 1782 Application in the continuation of that case. (Straub Decl. ¶ 17.) If Ms. Kurbatova loses before the Swiss Federal Tribunal, the case would be formally closed; however, she can seek to reopen the part of the case related to the charges the prosecutor did not bring. (Straub Decl. ¶¶ 17, 18.) In any such attempt to reopen the case, Ms. Kurbatova would also be entitled to submit evidence obtained from this 1782 Application to the Swiss prosecutor. (*See* Straub Decl. ¶18.) Thus, regardless of the outcome of the First Appeal, Ms. Kurbatova can and will provide any evidence obtained from this Application to the Swiss prosecutor. (*See* Kurbatova Decl. ¶ 10.)

Meanwhile, Mr. Lescaudron proceeded to trial on the charges that the prosecutor did bring. (Straub Decl. ¶ 21.) On February 9, 2018, the Swiss court found him guilty of certain crimes against certain victims and not guilty of certain other crimes. (Straub Decl. ¶ 21.) Some parties, including Mr. Lescaudron and Ms. Kurbatova, have appealed the verdict of the criminal court (the "Second Appeal"), meaning there will be a second trial before a Swiss criminal court of appeals on the same charges at the appellate level. (*See* Straub Decl. ¶ 22.) In such an appellate trial (and in preparation of the same), Ms. Kurbatova will be entitled to file new evidence. (*See* Straub Decl. ¶ 22.) Ms. Kurbatova, however, is under some time

6

pressure to obtain and file this evidence, as the appellate trial will take place from January 21, 2019 to January 25, 2019. (*See* Straub Decl. ¶ 24.)

### C. Contemplated Civil Proceedings

Ms. Kurbatova is also contemplating civil claims in Switzerland against Mr. Lescaudron and Credit Suisse for breach of their obligations toward her in relation to the scheme perpetrated on her to her detriment. (*See* Kurbatova Decl. ¶¶ 8, 10; Straub Decl. ¶¶ 25-31.) For example, Credit Suisse may be liable to Ms. Kurbatova on the theory that the bank is directly liable for Mr. Lescaudron's misconduct. (*See* Straub Decl. ¶¶ 28, 29.) Under Swiss law, civil claimants must identify and (with limited exceptions) submit the evidence they intend to provide at the time of filing the claim. (Straub Decl. ¶ 27.)

Ms. Kurbatova intends to file her civil claims against Mr. Lescaudron and Credit Suisse as soon as possible after obtaining the necessary evidence, including from this Application, and has retained Swiss counsel to represent her in these matters. (Kurbatova Decl. ¶¶ 9-10.)

## ARGUMENT

To obtain discovery under Section 1782, an applicant must satisfy two sets of criteria. First, the applicant must meet the requirements of the statute itself, which allows for discovery by an "interested person" in "the district in which [the discovery target] resides or is found . . . for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Second, the court, in its exercise of discretion and applying certain relevant factors, must find that granting discovery would be appropriate. *See Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264-65 (2004).

The twin goals of Section 1782 are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to U.S. courts." *Intel,* 542 U.S. at 252; *see also Application of Malev Hungarian Airlines*, 964 F.2d 97, 100, 102 (2d Cir. 1992) (noting "twin aims" of statute in reversing district

7

court's denial of discovery under Section 1782). Indeed, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).

Because Ms. Kurbatova meets both of these sets of criteria, the Court should grant the Application.

### I. The Application Meets the Statutory Prerequisites for Relief Under Section 1782.

Title 28, United States Code, Section 1782 ("Section 1782") authorizes discovery by litigants or other "interested persons" in proceedings before foreign and international tribunals. In pertinent parts, it states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal ... The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Thus,

> [A] district court is authorized to grant a § 1782 request where:
> (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made,
> (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and
> (3) the application is made by a foreign or international tribunal or any interested person.

*Brandi-Dohrn*, 673 F.3d at 80.

The Application easily satisfies each of these three statutory requirements.

*First,* Lyxor is registered to do business in New York, and based on a review of its website, Lyxor Asset Management Inc. has its only office here. (*See* Cogan Decl. Ex. 5, at 5, Ex. 6.) As for Mr. Daniloff, he works here. (*See* Cogan Decl. Ex. 7, Ex. 8.) Therefore, they are both "found" here for purposes of Section 1782. *See In re Ex Parte Application of Kleimar*

8

*N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (holding that a Section 1782 target was found in this district where, among other things, it "appears to conduct systematic and regular business in the United States and New York").

*Second,* the evidence is "for use in a proceeding in a foreign . . . tribunal." This "for use" requirement imposes a de minimis burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding, one Ms. Kurbatova easily meets. *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96, 98, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive"). Ms. Kurbatova has already contended or will contend in the foreign proceedings that Mr. Lescaudron and Credit Suisse are criminally and civilly liable for the losses she suffered from Mr. Lescaudron's unauthorized trading in her account, done with inadequate due diligence on the instruments he bought, and Credit Suisse's failure to supervise him, as well as its vicarious liability. (*See* Straub Decl. ¶¶ 4, 6, 11, 14-17, 22, 26, 28-30.) The discovery this Application seeks speaks directly to Ms. Kurbatova's foreign claims.

The communications among Credit Suisse, Mr. Lescaudron, Mr. Daniloff, and Lyxor will show the extent, if any, of the diligence on the Lyxor Product or the Hudson Fund, as will any documents concerning due diligence. Under Swiss law, Mr. Lescaudron and Credit Suisse could be liable for losses tied to these investments if they recommended them, if they failed to conduct adequate due diligence, or if they recommended the investments when they had a conflict of interest. (Straub Decl. ¶ 26.)

Towards this end, the materials sought—including regarding the formation of the Lyxor Product—will also speak to whether the investments in the Lyxor Product and the Hudson Fund were improper. Mr. Lescaudron appears to have wanted to buy large amounts of the Hudson Fund and to have accomplished that aim through masking holdings in the Hudson Fund

9

by having some of those holdings be indirectly owned through the Lyxor Product. **(***See* Kurbatova Decl. ¶¶ 25-27.) He also invested clients' assets in other funds that held interests in the Hudson Fund and stole client funds which he used to invest further in the Hudson Fund through companies he created. (Kurbatova Decl. ¶ 29.) In fact, clients of Mr. Lescaudron held more than a third of the Lyxor Product, which allowed Mr. Lescaudron to take outsized positions in the Hudson Fund. (*See* Kurbatova Decl. ¶ 25.) Such undisclosed interests which worked against his clients' interests is impermissible under Swiss law, under which investment advisors must act in the interests of their clients. **(**Straub Decl. ¶ 26.)

Ms. Kurbatova will use the evidence in the pending criminal case against Mr. Lescaudron in Swiss court, where, as a plaintiff, she has the right to submit evidence. (*See* Straub Decl. ¶¶ 17, 18, 22.) In particular, as part of the First Appeal, if Ms. Kurbatova's appeal is successful, she will be entitled to submit evidence in the now-reopened underlying action, and, if her appeal is rejected, she will be entitled to file new evidence with the Prosecutor's Office with a view to have the case reopened—she thus can and will submit additional evidence, including evidence she obtained from this 1782 Application, regardless of the outcome of the First Appeal. (*See* Straub Decl. ¶¶ 17, 18; Kurbatova Decl. ¶ 10.) In the Second Appeal, as explained above, Ms. Kurbatova will be entitled to file new evidence until the end of the appellate trial, which will take place in January 2019. (Straub Decl. ¶¶ 22, 24.)

Further, Ms. Kurbatova will use the evidence in the criminal investigation the Swiss prosecutor is undertaking into Credit Suisse for which Ms. Kurbatova is a plaintiff. (*See* Straub Decl. ¶ 6.) The statute itself specifically includes "criminal investigations conducted before formal accusation" within the kinds of foreign proceedings for which Section 1782 allows discovery. *See* 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 258 (holding that proceedings that have not "progressed beyond the investigative stage" can qualify for discovery under Section 1782); *In re Clerici*, 481 F.3d at 1333 (11th Cir. 2007) (noting that evidence obtained

10

through Section 1782 discovery can be used in criminal investigations conducted before formal accusation). And as a plaintiff, Ms. Kurbatova is entitled to submit evidence for the prosecutor to consider as part of the investigation. (*See* Straub Decl. ¶ 6.)

Ms. Kurbatova will also use the evidence in the contemplated civil cases against Mr. Lescaudron and Credit Suisse. Foreign proceedings that are "within reasonable contemplation" can be the basis for a Section 1782 application where there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1270 (11th Cir. 2014). Ms. Kurbatova has submitted a declaration stating that she will commence proceedings against Mr. Lescaudron and Credit Suisse in Switzerland as soon as she obtains evidence from this Application (and others) and that she needs the evidence before filing her claim because, under Swiss law, she must submit all documentary evidence along with her claim. (*See* Straub Decl. ¶ 27; Kurbatova Decl. ¶ 10); *Application of Consorcio Ecuatoriano*, 747 F.3d at 1271 (holding that foreign proceedings were reasonably contemplated where Section 1782 applicant had submitted declaration stating its intent to commence proceedings in Ecuador and explained that "under Ecuadorian law, it must submit its evidence with the pleading at the time it commences the civil action"). Moreover, Ms. Kurbatova's retention of Swiss counsel, criminal complaints, and investigation into the scheme, as this Application sets out, further shows that a claim against Credit Suisse and Mr. Lescaudron is reasonably contemplated. *See Application of Consorcio Ecuatoriano*, 747 F.3d at 1271 ("In light of [the Section 1782 applicant's] facially legitimate and detailed explanation of its ongoing investigation, its intent to commence a civil action . . ., and the valid reasons for [the applicant] to obtain the requested discovery under the instant section 1782 application before commencing suit, we can discern no error in the district court's determination that [the applicant's] foreign civil proceedings . . . were 'within reasonable contemplation.'").

*Third*, Ms. Kurbatova is an "interested person" within the meaning of the statute. An interested person can be a litigant, but also a plaintiff in a foreign proceeding or anyone who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256 (holding that a party that was the complainant in a European Commission investigation was an "interested person" under Section 1782). Ms. Kurbatova is an interested person in each of the foreign proceedings here. She is a plaintiff in the pending Swiss criminal case against Mr. Lescaudron and the criminal investigation against Credit Suisse. (*See* Straub Decl. ¶¶ 6, 11.) She will also be a litigant in the contemplated Swiss civil proceedings against Credit Suisse and Mr. Lescaudron. (Straub Decl. ¶¶ 28, 30.)

## II. The Discretionary *Intel* Factors Weigh in Favor of Granting Discovery Under Section 1782

In deciding whether to exercise its discretion to permit the Section 1782 discovery, the Court should consider the following factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264–65. Here, these factors support granting the Application.

### A. Whether the Discovery Target Is a Party to a Foreign Proceeding

Under *Intel*, if the respondent is not a party in the foreign proceedings, that fact favors the granting of the application. *See Intel*, 542 U.S. at 264. Here, neither Lyxor nor Mr. Daniloff is a party to the foreign proceedings. Accordingly, this factor weighs in favor of granting the application.

12

### B. Receptivity of Foreign Proceedings to U.S. Judicial Assistance

The Second Circuit has made clear that, in examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.* Here, not only is there no such proof, Ms. Kurbatova has submitted a declaration of a Swiss law expert demonstrating that any evidence she obtains through the Application will be usable in any of the five Swiss proceedings, even though the admissibility of evidence in a foreign proceeding is not required to support an application under Section 1782. *Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.").

### C. Whether the Request Is an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The Application is not an attempt to circumvent foreign proof-gathering restrictions. Courts typically weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith, which there is no suggestion of here. *See In re Application of Hill*, No. M 19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor" (internal quotations omitted)); *In re Application of Gemeinschaftspraxis Dr. Med. Schottdorf*, No. Ml9-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006). Indeed, it is not an attempt to circumvent such restrictions even if the discovery sought is unavailable in the foreign jurisdiction or the

applicant has not first tried to obtain the discovery overseas. *See, e.g.*, *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *6-7 (S.D.N.Y. Oct. 30, 2017).

Moreover, should there at any point be questions concerning the admissibility under Swiss law of the discovery sought by Ms. Kurbatova, those questions are best resolved by the Swiss court rather than a U.S. district court. As one court has explained, "[s]ince foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them, the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law." *Euromepa*, 51 F.3d at 1101 (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235–36 (1994)).

### D.  Whether Request Is Unduly Burdensome

The request in this Application is not unduly burdensome. Ms. Kurbatova seeks a narrow set of documents and two limited depositions. The requests seek information only on the narrow topic of the Lyxor Product that Mr. Lescaudron bought for Ms. Kurbatova's account and the diligence he conducted before taking direct and indirect interests in the Hudson Fund on her behalf. Once discovery is authorized under Section 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contain the relevant practices and procedures for the taking of testimony and the production of documents. *Mees v. Buiter,* 793 F.3d 291, 302 (2d Cir. 2015) ("[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."). Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Under

the Federal Rules of Civil Procedure, requests to produce can be directed at any document or thing in the possession, custody, or control of the producing party.  Fed. R. Civ. P. 26(b).

## CONCLUSION

WHEREFORE, Applicant Ms. Kurbatova prays for an order of this Court:

(1) Granting discovery pursuant to Section 1782;

(2) Authorizing the issuance of the subpoenas attached to the Declaration of Jonathan D. Cogan;

(3) Granting such other and further relief as this Court deems just and proper.


Dated: October 11, 2018                            Respectfully submitted,

**KOBRE & KIM LLP**

s/     Steven W. Perlstein_____
Steven W. Perlstein
steven.perlstein@kobrekim.com
Jonathan D. Cogan
jonathan.cogan@kobrekim.com
Kelly Spatola
kelly.spatola@kobrekim.com
Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 488-1200
Facsimile: (212) 488-1220

*Attorneys for Applicant Olga Kurbatova*