UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

IN RE:

APPLICATION OF OLGA KURBATOVA
FOR AN ORDER UNDER 28 U.S.C. §
1782 TO TAKE DISCOVERY FROM
LYXOR ASSET MANAGEMENT INC.
AND ELLIOT DANILOFF

Case No. _____

---

## DECLARATION OF GERRIT STRAUB

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1. My name is Gerrit Straub. I am over 18 years of age and submit this declaration in support of the Ex Parte Application of Olga Kurbatova for an Order under 28 U.S.C. § 1782 to Take Discovery Lyxor Asset Management Inc. and Elliot Daniloff (the "1782 Application"). I have reviewed and am familiar with the 1782 Application.

2. I am a senior partner at the law firm of Klein Rechtsanwalte AG and a duly qualified Swiss lawyer competent to opine on questions of Swiss law. I earned my law degree from the University of Berne Law School and earned my LL.M. from Cornell University in 1997.

3. I understand that Olga Kurbatova, the applicant here, is seeking information through the 1782 process to assist with several Swiss proceedings related to a criminal scheme by Patrice Lescaudron, a Credit Suisse AG ("Credit Suisse") banker, who made improper investments in his clients' accounts, including Ms. Kurbatova's, in, among other things, a product structured by Lyxor Asset Management Inc. (called Lyxor – [x3 Dynamic Leverage Fund] Certificate (the "Lyxor Product")) and in multiple series of the Hudson River Russia Fund, Ltd. (the "Hudson Fund" – a fund of Daniloff Capital, founded by Elliot Daniloff). Ms.



Kurbatova's declaration, dated August 22, 2018 in support of her application sets out in more detail the scheme, which has resulted in a criminal case against Mr. Lescaudron in which he has been convicted and imprisoned.

4. There are several proceedings to which this application is relevant: (i) a Swiss criminal investigation into Credit Suisse related to the Lescaudron scheme; (ii) an appeal by Ms. Kurbatova as victim of Mr. Lescaudron's scheme in the Swiss criminal case against Mr. Lescaudron seeking to expand the scope of the prosecutor's charges against Mr. Lescaudron (the "First Appeal"); (iii) an appeal of Mr. Lescaudron's criminal conviction, in which new evidence may be submitted (the "Second Appeal"); (iv) a Swiss civil proceeding against Credit Suisse that Ms. Kurbatova is contemplating to seek damages in relation with the actions of Mr. Lescaudron; and (v) a Swiss civil proceeding against Mr. Lescaudron that Ms. Kurbatova is contemplating.

5. As discussed in more detail below, in any of these proceedings, under Swiss law, evidence that Ms. Kurbatova acquired through this Section 1782 application would be acceptable pursuant to the prevailing interpretation of the law.

**The Swiss Criminal Investigation**

6. The Swiss prosecutor (the "Prosecutor"), before sending Mr. Lescaudron's case to trial, opened a separate case to investigate the potential criminal liability of Credit Suisse for Mr. Lescaudron's wrongdoing. Ms. Kurbatova is a private plaintiff in these proceedings as well and has all related procedural rights, including the right to submit evidence obtained from this 1782 Application.

7. Ms. Kurbatova would be interested in any evidence that shows, as is relevant to the present application, the extent, if any, of the diligence Mr. Lescaudron conducted on the Lyxor Product and Hudson Fund, which in turn would be relevant to show that Mr. Lescaudron acted in breach of internal regulations, that Credit Suisse did not implement adequate

2



regulations, that the felonies could take place due to a lack of supervision within Credit Suisse, that red flags were ignored, and more generally that the systems at Credit Suisse were either not adequate or failed. Ms. Kurbatova would be further interested in any evidence showing that Mr. Lescaudron had a personal stake in the Lyxor Product or the Hudson Fund or that the investments were otherwise collusive in violation of Swiss law.

8. Under the Swiss Criminal Procedure Code (hereafter "CrimPC"), Ms. Kurbatova's right to participate as a plaintiff in criminal proceedings (including investigations) stems from the right to be heard (art. 107 CrimPC) for private claimants, persons suffering harm and whose rights have been directly violated by a criminal offence (art. 115 §1 CrimPC). In order to be a participant in the criminal proceedings, i.e. a private claimant, the person suffering harm has to expressly declare that he or she wishes to participate in the criminal proceedings as a criminal and/or civil claimant, otherwise he or she remains with the status of "other participants," which does not include as many rights (art. 118 § 1 CrimPC). The declaration to become a private claimant can be oral or written; a criminal complaint, like the one Ms. Kurbatova filed in the criminal case against Mr. Lescaudron (discussed below), is constitutive of such declaration (art. 119 § 1 CrimPC). The right to be heard (art. 107 CrimPC) includes, amongst others, the right to access the case file, the right to participate in procedural acts including filing all evidence deemed useful and requesting further specific evidence to be taken, and the right to comment on the case and on the proceedings.

**The Swiss Criminal Appeals in the Criminal Case Against Mr. Lescaudron**

9. The First Appeal and the Second Appeal in the criminal case against Mr. Lescaudron in which he has been convicted, are two other proceedings in which Ms. Kurbatova may use evidence she obtains through the 1782 Application (although no new evidence can be filed related to the First Appeal while it is pending before the Swiss Federal Tribunal).

3



10. The First Appeal stems from the Prosecutor's decision to take to trial a case against Mr. Lescaudron that did not encompass all of the claims that Ms. Kurbatova asserted. If the First Appeal is rejected by final court decision by the Swiss Federal Tribunal, new evidence can be used to try to reopen the proceedings that have been abandoned, pursuant to Paragraph 18 below.

11. On August 4, 2016, Ms. Kurbatova filed a criminal complaint against Mr. Lescaudron and any other implicated person, for misappropriation (art. 138 CrimC), fraud (art. 146 CrimC), criminal mismanagement (art. 158 CrimC), and forgery of documents (art. 251 CrimC) as well as any other crime the investigation could reveal.

12. Five other complaints were filed against Mr. Lescaudron by other plaintiffs.

13. The Prosecutor, however, did not take to trial all of the acts that Ms. Kurbatova complained of. To send a case to trial, a Swiss prosecutor issues an Accusation Act which describes the facts which the Prosecutor deems felonious as well as the felonies concerned. The Accusation Act delimitates the scope of the trial.

14. On June 26, 2017, the Prosecutor transmitted the Accusation Act to the competent criminal Court, in view of judgement. The Accusation Act filed in Court by the Prosecutor listed a number of facts which he deemed constitutive of the following offences:

- Fraud (art. 146 CrimC)
- Forgeries of documents (art. 251 CrimC)
- Criminal mismanagement (art. 158 CrimC)

15. However, the Accusation Act dated June 26, 2017 did not include certain facts and circumstances exposed by Ms. Kurbatova in her criminal complaint and pertaining to the improper investments made by Mr. Lescaudron in her account or the offence of criminal mismanagement in connection with the known and described facts asserted by Ms. Kurbatova in her criminal complaint.

4

16. Ms. Kurbatova appealed the Prosecutor's decision to exclude certain facts and claims from the criminal case, resulting in the First Appeal. The First Appeal sought an order requiring the Prosecutor to reconsider the facts and claims he excluded from the case and to investigate them.

17. The court rejected the First Appeal on June 21, 2018. Ms. Kurbatova has filed an appeal to the Swiss Federal Tribunal against the June 21, 2018 decision. Thus, if Ms. Kurbatova wins before the Swiss Federal Tribunal, the case which was the object of the First Appeal will continue and she may use evidence from this 1782 Application in the continuation of this case. If Ms. Kurbatova would lose before the Swiss Federal Tribunal the case would be formally closed.

18. However, a Swiss prosecutor must under certain conditions reopen proceedings that have been abandoned by a legally binding ruling if he obtains new evidence showing that the accused committed a criminal offence (art. 6 Swiss Criminal Procedural Code). Therefore, even if the Swiss Federal Tribunal rejects Ms. Kurbatova's First Appeal, Ms. Kurbatova will be able to file new evidence, including evidence from this 1782 Application, with the Prosecutor's office to seek to have the proceedings reopened.

19. Ms. Kurbatova would be interested in any evidence which would show that Mr. Lescaudron did indeed give her imprudent or deceptive advice and made improper investments based on a failure to conduct due diligenge and/or a conflict of interest.

20. The Second Appeal relates to the verdict in the criminal case that the Prosecutor did try against Mr. Lescaudron.

21. On February 9, 2018, after a two-week trial, the Court found Mr. Lescaudron guilty of various crimes and acquitted Mr. Lescaudron of various other crimes. He received a sentence of five years.



22. Certain parties, including Ms. Kurbatova and Mr. Lescaudron, have appealed the judgment, resulting in the Second Appeal. The case therefore remains open at this time, and there will be a trial before the Criminal Court of Appeal (on the same charges at the appellate level), during which Ms. Kurbatova and others can file new evidence, including evidence obtained through this application under Section 1782.

23. Any evidence relating to the facts which are the object of the trial and within the scope of the Accusation Act, especially relating to the Mr. Lescaudron's purported conflicts of interest or failure to conduct adequate due diligence, could prove essential and would be taken into consideration by the Swiss appellate court.

24. I am informed by trial counsel that the new trial is expected to take place during the week of January 21 to 25, 2019. Ms. Kurbatova will have to obtain any evidence through the Section 1782 application before the trial to be able to submit it as part of the Second Appeal. She will not be able to submit additional evidence once the second trial (on appeal) is over.

**Contemplated Civil Proceedings Against Mr. Lescaudron and Credit Suisse**

25. Ms. Kurbatova will also be able to use any evidence she obtains from this 1782 Application in Swiss civil proceedings she is contemplating against Mr. Lescaudron and Credit Suisse.

26. Under Swiss law, Credit Suisse and Mr. Lescaudron could have liability for losses resulting from investments that they recommended if there was not adequate due diligence or the recommendation was made when they had a conflict of interest. Investment advisors must act in the interests of their clients.

27. The civil procedure in Switzerland is governed by the Swiss Civil Procedure Code (hereafter "CPC"). In Swiss civil litigation, the burden of proof is solely on the claimant and therefore it must as a rule bring the documentary evidence itself, as the right to compel the production of documents from other parties or third parties is extremely limited. The claims



filed by the claimant must include notice of the evidence offered for each factual allegation (art. 221 §1 CPC). The available physical records (documents) to be offered in evidence and a list of the offered evidence are to be filed with the claim (art. 221 §2 CPC). Thus, in general, under Swiss civil procedure, the claimant must identify and submit evidence it intends to use at the time of the filing the claim.

28. Ms. Kurbatova is contemplating a civil claim to be filed against Credit Suisse in relation to facts which I understand have been described by Ms. Kurbatova herself in a separate affidavit. Ms. Kurbatova was in a contractual relationship with Credit Suisse with regard to her account there. Mrs. Kurbatova incurred losses on the investments carried out from the account, in her view due to the improper activities carried out in relation to her account by her relationship manager at the bank, Mr. Lescaudron. At this time, I understand Ms. Kurbatova plans to bring an action against Credit Suisse for breach of its contractual obligations towards Ms. Kurbatova in relation to the acts committed by Mr. Lescaudron, acting as an employee and an agent of Credit Suisse.

29. Indeed, according to Swiss law (notably art. 55 of the Swiss Code of Obligations), an employer is liable for the loss or damage caused by acts carried out by its employees or auxiliary staff in the performance of their work, unless he proves that he took all due care to avoid a loss or damage of this type or that the loss or damage would have occurred even if all due care had been taken. Therefore, Ms. Kurbatova is contemplating filing against Credit Suisse for compensation for the losses resulting from the fraudulent acts of Mr. Lescaudron. Obviously, the cause of action against Credit Suisse could be slightly different depending on the outcome of this application.

30. Ms. Kurbatova is also contemplating civil proceedings against Mr. Lescaudron for his role in the scheme. As discussed, because a civil claimant must submit evidence at the time of the filing of the claim under Swiss law, it will be helpful to obtain evidence from this



application before commencing proceedings against Mr. Lescaudron. Of course, any evidence relating to Mr. Lescaudron's misconduct—lack of required due diligence or improper conflicts of interest—would be relevant here.

31. In either contemplated civil case, Swiss courts will allow Ms. Kurbatova to use evidence she obtains from this 1782 Application to support her claims.

**Conclusion**

32. As set forth above, the use of evidence from this 1782 application in any of the five Swiss proceedings in question here would be entirely consistent with Swiss laws, rules, and policies on discovery.

33. The factual information contained in this declaration is included mainly in reliance on the following documents:

- Criminal complaint dated August 4, 2016 by Ms. Kurbatova to M. Bertossa, the Geneva public prosecutor, against Mr. Lescaudron and others

- Separation Order and Rejection of Investigation Request ("Ordonnance de disjonction & de refus d'actes d'instruction") by Mr. Bertossa, the Geneva prosecutor, dated June 7, 2017 (procedure no. P/24473/2015) in case against Mr. Lescaudron

- Appeal dated July 7, 2017 to the Appeals Chamber of the Geneva Cour de Justice by Ms. Kurbatova against the implicit cessation act to be deduced out of the indictment by the Geneva public prosecutor dated June 26, 2017 in the procedure P/24473/2015 against M. Lescaudron, together with its enclosures no. 1 to 5 (re First Appeal)

- Appeal declaration dated April 3, 2018 for Ms. Kurbatova by Mr. Marc Hassberger, Esq., to Appeals and Revision Chamber of the Geneva Cour de Justice against the judgement of the Geneva Correctional Tribunal dated

February 9, 2018 in the criminal procedure against M. Lescaudron (re Second Appeal)

- Decision no. ACPR/349/2018 by the Appeal Chamber in criminal matters of the Geneva Cour de Justice dated June 21, 2018 in the appeal made by Ms. Kurbatova on July 7, 2017 against the implicit cessation act to be deduced out of indictment by the Geneva public prosecutor dated June 26, 2017 in the procedure P/24473/2015 (see document no. 3) (re First Appeal)

- Appeal in criminal matters dated August 23, 2018 for Ms. Kurbatova by Mr. Marc Hassberger, Esq., to the Swiss Federal Tribunal against the decision no. ACPR/349/2018 by the Appeal Chamber in criminal matters of the Geneva Cour de Justice dated June 21, 2018 (see document no. 5) (re First Appeal)

34. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed in Zurich, Switzerland, on this _10_ day of October 2018.

_____
Gerrit Straub